UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80794-CIV-ZLOCH

JAVIER AVILES,

      Plaintiff,

vs.                                        **O R D E R**

CHARLES SCHWAB & CO., INC.,

      Defendant.
_____/

     THIS MATTER is before the Court upon Plaintiff Javier Aviles's Motion For Hearing On His Motion To Vacate Arbitration Award (DE 14), Plaintiff Javier Aviles's Motion For Reconsideration (DE 17) and Defendant Charles Schawb & Co., Inc.'s Motion To Confirm Arbitration Award And Enter Judgment (DE 15). The Court has carefully reviewed said Motions, the entire court file and is otherwise fully advised in the premises.

     After reviewing the pleadings and submissions of both Parties, the Court finds that the Parties' Motions may properly be resolved on the merits without an evidentiary hearing. See Booth v. Hume Pub., Inc., 902 F.2d 925, 932 (11th Cir. 1990)(noting that motions to confirm or vacate an arbitration award may be decided on the papers without oral testimony). Thus, Plaintiff Javier Aviles' Motion For Hearing (DE 14) will be denied.

     Plaintiff Javier Aviles's instant Motion For Reconsideration (DE 17) asks the Court to reconsider its prior Order (DE 10), wherein it denied his Motion To Amend Motion To Vacate And For Extension To File Memorandum Of Law In Support (DE 2) and struck

his Amended Motion To Vacate (DE 8).   The Court will briefly address the procedural history of the above-styled cause before addressing the instant Motion For Reconsideration (DE 17) and will then turn to the merits of Plaintiff's Motion To Vacate before addressing Defendant's Motion To Confirm Arbitration Award And Enter Judgment (DE 15).

I.

Defendant Charles Schwab & Co., Inc. initiated arbitration proceedings against Plaintiff Javier Aviles, its former employee, and against Banc of America Investment Services, Inc. (hereinafter "BAI") with the Financial Industry Regulatory Authority (hereinafter "FINRA"), on or about July 17, 2007, after it came to believe that Plaintiff Aviles was improperly soliciting its clients.   See DE 1, Ex. A.   Defendant's claims against Aviles and BAI included: breach of contract, misappropriation and misuse of trade secrets, breach of duty of loyalty, breach of fiduciary duty, tortious interference with contractual and business relations and unfair competition relating to Aviles's resignation from Schwab and subsequent employment with BAI.   See id.   During the final hearing on the merits of these claims, BAI was dismissed from the arbitration proceeding, but Aviles was not.   DE 1, p. 2.

Following several days of hearing sessions, on April 15, 2009, the arbitration panel entered an award of $1,400,000.00 in favor of Defendant Schwab and against Plaintiff Aviles.   DE 1, pp. 13-15. Plaintiff then timely filed his Motion To Vacate Arbitration Award

(DE 1, Ex. A) in the Circuit Court of the Fifteenth Judicial Circuit in Palm Beach County, Florida, and Defendant removed the action to this Court pursuant to 28 U.S.C. § 1441, et seq. and 28 U.S.C. § 1332.  See DE 1.  Plaintiff's original Motion to Vacate Arbitration Award (DE 1, Ex. A) argued that the arbitration award should be vacated pursuant to Florida statute §682.13, the Federal Arbitration Act, and common law, based on the following grounds:

> 1) the arbitrators refused to hear evidence material to the controversy substantially prejudicing the rights of Aviles;
>
> 2) [the arbitrators] refused to postpone the hearing upon sufficient cause substantially prejudicing the rights of Aviles; and
>
>  3) [the arbitrators] rendered an award which violates public policy, is arbitrary and capricious, irrational, and a manifest disregard of the law.

DE 1, p. 7.  After the above-styled cause was removed to this Court, Plaintiff Aviles filed a Motion To Amend Motion To Vacate And For Extension To File Memorandum Of Law In Support (DE 2) to add a new claim as to why the arbitration award should be vacated. This new claim was based on Plaintiff's assertion that the chair of the arbitration panel had improper communications with a third party about the arbitration while it was pending.  See DE 2. Plaintiff stated in his Motion To Amend (DE 2) that he had sworn testimony in the form of an affidavit from the person with whom the chair communicated that the chair revealed firmly held

predispositions and opinions, which the chair did not disclose to the parties to the arbitration.   See DE 2, p. 2.   However, Plaintiff did not attach this affidavit to his Motion To Amend (DE 2), nor did he attach his proposed amendment.

Plaintiff Aviles acknowledged in his Motion To Amend (DE 2) that Defendant Schwab objected to the relief requested but stated that "no reason was given for Schwab's objection to this simple Motion."   DE 2, p. 3.   Yet, Defendant made the basis for its objection clear in its Memorandum Of Law Opposing Aviles' Motion To Amend (DE 3) when it argued that extending the deadline would be contrary to the Parties' arbitration agreement.   In its Memorandum (DE 3), Defendant included the Uniform Submission Agreement executed by Plaintiff Aviles along with a copy of FINRA Form U-4 and FINRA Rules 13904[1] and 13101[2].   See DE 3-1.   Defendant argued

---

[1] FINRA Rule 13904 reads in relevant part as follows:

> All monetary awards shall be paid within 30 days of receipt unless a motion to vacate has been filed with a court of competent jurisdiction.   An award shall bear interest from the date of the award: If not paid within 30 days of receipt; if the award is the subject of a motion to vacate which is denied; or as specified by the panel in the award. Interest shall be assessed at the legal rate, if any, then prevailing in the state where the award was rendered, or at a rate set by the arbitrator(s).

FINRA Rule 13904(j), cited in DE 3-1, p. 11.

[2] Rule 13101(b) provides that when a dispute is submitted to arbitration under the Code pursuant to an arbitration agreement,

that "[u]nder the applicable rules, a party is required to pay an award, or move to vacate an award, within thirty days of receiving the award" and therefore the deadline for Plaintiff to file his motion to vacate was May 15, 2009, a date which had already passed by the time this case was removed to federal court.[3] See DE 3.

If Plaintiff disagreed with Defendant's reasonable interpretation of their agreement or had evidence pertinent to the Court's analysis of the Parties' agreement, Plaintiff had an opportunity to provide such evidence and argument in his Reply To Schwab's Memorandum Of Law (DE 4). Instead, Plaintiff submitted what amounted to a two-page memorandum arguing that "Schwab is obviously distorting [FINRA Rule 13904] by claiming that it means that a waiver of grounds to vacate occurs if the motion to vacate is not filed within 30 days." DE 4, p. 1. It is not clear why Plaintiff believed that Defendant's interpretation of the rule was an obvious distortion as Plaintiff provided no real analysis of the issue. See DE 4.

Plaintiff further stated in his Reply (DE 4) that "any amendment would relate back to the original filing on May 14, 2009." DE 4, pp. 2-3. However, Plaintiff again did not provide any supporting case law nor did he support his assertions with

_____

the Code is incorporated by reference into the agreement.

[3] Plaintiff Aviles filed his Motion to Vacate on May 14, 2009, in the Fifteenth Judicial Circuit for Palm Beach County, Florida.

legal argument beyond simply stating his request was "in the interest of common sense and judicial economy." DE 4, p. 3. Regardless, the Court analyzed this argument and explained in its prior Order (DE 10) why Plaintiff's proposed amendment would not relate back. As the Court discussed at length in its prior Order (DE 10), the Supreme Court narrowed the scope of the "conduct, transaction, or occurrence" analyzed when considering a motion to amend in Mayle v. Felix, 545 U.S. 644, 659 (2005). See DE 10, pp. 6-10. That discussion will not be repeated here because a motion for reconsideration "is not a vehicle for rehashing arguments already rejected by the court or for refuting the court's prior decision." Wendy's Int'l, Inc. v. Nu-Cape Constr., Inc., 169 F.R.D. 680, 686 (M.D. Fla. 1996).

Although Plaintiff may have initially taken for granted that an amendment to his original Motion To Vacate would be permitted, Defendant's Memorandum of Law in Opposition to his Motion put Plaintiff on notice that there was a genuine dispute as to the amount of time permitted to file a Motion to Vacate or to add new claims to such a Motion. See DE 3. Rather than providing reasoned argument to support his claim that he should be allowed to amend his Motion to Vacate, Plaintiff cursorily dismissed Defendant's objections to his Motion To Amend, stating simply that Defendant's interpretation of FINRA Rule 13904 was clearly erroneous. See DE 4, p. 2.

The Court disagreed with Plaintiff Aviles's interpretation of FINRA Rule 13904 and found that the Parties agreed to shorten the time for filing motions to vacate an arbitration agreement by incorporating FINRA Rule 13904(j) into their agreement to arbitrate. <u>See</u> DE 10. Thus, the Court found, the FAA's three-month provision did not apply and because the first sentence of Rule 13904 (j) mandates that a motion to vacate be filed within thirty days of an arbitration award, any motion to vacate filed thereafter is untimely. <u>See</u> <u>id.</u> Accordingly, the Court denied Plaintiff's Motion To Amend (DE 2) and struck his Amended Motion To Vacate (DE 8)

II.

Plaintiff's instant Motion For Reconsideration (DE 17) asks the Court to reconsider its prior Order (DE 10) wherein it denied his Motion To Amend (DE 2) and struck his Amended Motion To Vacate (DE 8). A district court is justified in reconsidering a prior order pursuant to Federal Rule of Civil Procedure 60(b) when (1) there is an intervening change of law; (2) new evidence is available; or (3) there is a need to correct clear error or manifest injustice. <u>Burger King Corp. v. Ashland Equities, Inc.,</u> 181 F. Supp.2d 1366, 1369 (S.D. Fla., 2002); <u>Lamar Adver. of Mobile, Inc. v. City of Lakeland, Florida</u>, 189 F.R.D. 480, 489 (M.D. Fla. 1999). In the above-styled cause there has been no intervening change of law or new evidence presented which could not

7

have been presented in a prior motion. Further, there is no clear error or manifest injustice that weighs in favor of reconsideration of the Court's prior Order (DE 10).

Plaintiff asserts five grounds for reconsidering the Court's Order (DE 10) denying his Motion To Amend and striking his Amended Motion:

> (I) [He] did not contractually agree to extend application of the FINRA Code of Arbitration Procedure beyond the arbitration forum; (II) The plain wording of Rule 13904(j) and the FINRA Notification does not require a Motion to Vacate to be filed within thirty days [of an arbitration award]; (III) FINRA did not intend for Rule 13904(j) to impose a time limitation upon a party's statutorily created right to file a motion to vacate; (IV) [His] Amended Motion To Vacate was authorized by Rule 15 without leave of Court; and (V) Controlling authority in the 11th Circuit provides that [his] Motion to Amend relates back to his original pre-thirty day filing.

DE 17, p. 5. None of these grounds warrant the relief Plaintiff seeks. Rather, Plaintiff attempts to argue now what he neglected to argue in his original Motion (DE 2) or in his Reply To Schawb's Memorandum Of Law (DE 4). He states that his Motion For Reconsideration (DE 17) "is inclusive of new evidence, legal authority and argument not heretofore raised by Aviles," but gives no explanation as to why this new evidence, legal authority and argument were "not heretofore raised." See id. It is well settled that motions for reconsideration should not be used to "raise arguments which could, and should, have been made before the

judgment was issued." <u>Lussier v. Duggar</u>, 904 F.2d 661, 667 (11th Cir. 1990)(quoting <u>Federal Deposit Ins. Corp. v. Meyer</u>, 781 F.2d 1260, 1268 (7th Cir. 1986)); <u>See</u> <u>Z.K. Marine, Inc. v. M/V Archigetis</u>, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)(stating "[a] motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision."). Accordingly, "where a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion." <u>Mays v. U.S. Postal Serv.</u>, 122 F.3d 43, 46 (11th Cir. 1997). Plaintiff has failed to make such a showing. All of the arguments in the instant Motion For Reconsideration (DE 17) were available to Plaintiff during the pendency of his Motion To Amend (DE 2) and "[d]enial of a motion for reconsideration is especially sound when the party has failed to articulate any reason for the failure to raise the issue at an earlier stage in the litigation." <u>Sanderlin v. Seminole Tribe of Fla.</u>, 243 F.3d 1282, 1292 (11th Cir. 2001) (quotations omitted).

That Plaintiff disagrees with the Court's interpretation of his contractual obligations is clear. The instant Motion For Reconsideration (DE 17) is ripe with indignant hyperbole. However, Plaintiff's unprofessional tone and generous use of bold font and underlining do nothing to strengthen his argument.

The Court made its prior ruling based on the record before it,

yet Plaintiff argues that this Court's construction of Rule 13904(j) "has contradicted what Aviles's counsel was directly instructed by FINRA about the timing of a motion to vacate."  DE 17, p. 9.  Plaintiff bases this argument primarily on the FINRA cover letter sent to him with the arbitration award.  See DE 4. However, Plaintiff attached this letter to his Reply To Defendant's Memorandum Of Law (DE 4) contending that the letter settled conclusively that the Rule pertains to the timing of payment only and not to the timing of a motion to vacate.  Thus, the Court was aware of this letter when it made its prior ruling and nothing contained in said letter is sufficient to contradict the Court's interpretation of Rule 13904.  See DE 10.  What the letter does conclusively state is that "FINRA Dispute Resolution is not authorized to provide legal advice concerning a motion to vacate." DE 4, p 7.

Additionally, Plaintiff contends that manifest injustice will result if he is unable to amend his Motion to Vacate to add his new ground for relief.  This argument is unavailing because the claim that Plaintiff seeks to add does not rise to the level warranting vacatur of the underlying arbitration award.  The core of Plaintiff's new claim is that the chair of the arbitration panel revealed to a third party that the chair had firmly held predispositions and opinions on the merits of Plaintiff's case before it began and that it is these predispositions which led to

10

the award against Plaintiff.  See DE 2.  Indeed, the Federal Arbitration Act provides that the court may vacate an arbitration award upon application of any party to the arbitration "where there was evident partiality or corruption in the arbitrators."  See 9 U.S.C. §10(a)(2).  However, the conduct alleged by Plaintiff falls far short of "evident partiality."  See, e.g., Middlesex Mut. Ins. Co. v. Levine, 675 F.2d 1197 (11th Cir. 1982) (vacating an arbitration award where the neutral arbitrator had repeated and significant business dealings involving thousands of dollars with one of the parties to the arbitration over a period of four or five years and did not disclose this significant connection to some of the parties, thus creating a reasonable appearance of bias); See also Brandon Jones Sandall Zeide Chalal & Musso, P.A. v. Beasley & Hauser, P.A., 925 So.2d 1142, 1145 (Fla. Dist. Ct. App., 2006) (noting that pursuant to § 682.13(1), Fla. Stat., not only must the partiality of the neutral arbitrator be "obvious and plain," it must also be shown to have "unfairly affected the rights of the complaining party.").

Plaintiff alleged in his Motion To Amend (DE 2) that he had sworn testimony in the form of an affidavit from the person with whom the chair communicated, that supported his claim of bias or partiality.  Though Plaintiff did not attach said affidavit to his Motion To Amend (DE 2), he does attach the affidavit of Marc S. Dobin, Esq., to the instant Motion For Reconsideration (DE 17-2).

Even if the Court were to consider this previously unsubmitted affidavit on a Motion for Reconsideration, this affidavit does not come close to stating all that Plaintiff claims. Rather, it admits that Mr. Dobin was not even aware of Plaintiff's case by name until he looked it up on the Internet after the award was rendered. <u>See</u> DE 17-2, p. 36. Mr. Dobin's affidavit states that he served as an arbitrator on a FINRA arbitration panel, unrelated to the arbitration between Plaintiff Aviles and Defendant Schwab, with David Slater, Esq., who was the chair of the arbitration panel in the case between Javier Aviles and Charles Schwab & Co., Inc. <u>See</u> DE 17-2, pp. 30 & 35.   Mr. Dobin alleges that Mr. Slater made statements to him while they served as arbitrators together on an unrelated matter regarding his views on various issues concerning "the role of arbitrators, including his opinion of his duty as an arbitrator in a certain type of employment related arbitration." <u>See</u> <u>id.</u> at p. 36. Mr. Dobin further states:

> in regard to an arbitration by a securities firm against its former financial advisor concerning enforcement of a non-solicitation agreement and related alleged misappropriations of trade secrets, Mr. Slater told me that in his view, if a court enters a preliminary injunction or temporary restraining order against the financial advisor before the arbitration, then his only task as an arbitrator in the subsequent arbitration on the merits, is to quantify and award damages against the financial advisor.

<u>Id.</u>  Plaintiff extrapolates his claim regarding bias from Mr. Dobin's retelling and summation of what Mr. Slater apparently

revealed to him in another proceeding, without ever mentioning any specific case or any party by name.   See DE 17-2, pp. 35-37. Because a preliminary injunction was entered against Plaintiff prior to the start of the arbitration, Plaintiff surmises that the arbitration chair's "predispositions and opinions, which he did not disclose to the parties to the arbitration as required, clearly led to the award against Aviles." DE 2, p. 2.  There is nothing clear about this deduction based on the record before the Court.

In this Circuit, bias must be "direct, definite and capable of demonstration rather than remote, uncertain, and speculative." Lifecare Int'l, Inc. v. C.D. Medical, Inc, 68 F.3d 429, 433 (11th Cir. 1995)(quoting Middlesex Mut. Ins. Co. v. Levine, 675 F.2d 1197, 1201 (11th Cir. 1982) ; See Power Services Associates, Inc. v. UNC Metcalf Servicing, Inc., 338 F. Supp.2d 1375, 1381 (N.D. Ga. 2004)(stating that "the burden on a claimant for vacation of an arbitration award due to 'evident partiality' is heavy, and the claimant must establish specific facts that indicate improper motives on the part of the arbitrator.")(quoting Al-Harbi v. Citibank, N.A., 85 F.3d 680, 683 (D.C. Cir. 1996)).

Plaintiff's allegation of bias is far from direct, definite or capable of demonstration and there is nothing in the record to indicate the chair of the arbitration panel had any improper motives in deciding the case.  It is hard to imagine a situation more speculative than trying to determine what was in the

arbitrator's mind at the time he evaluated Plaintiff's or Defendants' claims. Even assuming the chair of the arbitration panel did communicate the view alleged in Mr. Dobin's affidavit (DE 17-2, pp. 35-37), there is nothing to suggest this opinion applied to every set of facts before him or that this view was so strongly held that it could not be changed. Further, the record does not support such a claim. In Plaintiff's case, the arbitration chair questioned the Parties about the federal court proceeding at the beginning of arbitration and Plaintiff's counsel explained in detail that the injunction proceedings were much different from the case before the arbitrators, that the federal proceedings did not purport to control the outcome of the arbitration award and that the evidence which would be presented to the arbitrators would be "much more complete on many more issues than what the federal court heard." See DE 22-1, pp. 4-5. There is nothing in the record to suggest that the chair and the entire panel did not believe Plaintiff's counsel on this point or to suggest that they did not act accordingly. Further, there has been no evidence presented to suggest bias was shown for or against either party. Thus, the claim that Plaintiff seeks to add to his Motion To Vacate does not warrant vacatur of the arbitration award and no manifest injustice will result from the Court's denial of Plaintiff's Motion To Amend (DE 2).

III.

After reviewing the claim Plaintiff seeks to add to his Motion to Vacate and finding that even were the Court to allow an amendment, this ground does not warrant vacatur, the Court now turns to Plaintiff's remaining claims in support of his Motion to Vacate:

> 1) the arbitrators refused to hear evidence material to the controversy substantially prejudicing the rights of Aviles;
>
> 2) [the arbitrators] refused to postpone the hearing upon sufficient cause substantially prejudicing the rights of Aviles; and
>
> 3) [the arbitrators] rendered an award which violates public policy is arbitrary and capricious, irrational, and a manifest disregard of the law.

See DE 1, Ex. A; See also DE 13.  The Court will address each of these grounds in turn.

The Federal Arbitration Act (hereinafter "FAA") presumes that reviewing courts will confirm arbitration awards and that judicial review of the arbitration process and the amount of the award will be severely limited.  Booth v. Hume Pub., Inc., 902 F.2d 925, 932 (11th Cir. 1990).  The burden on the party seeking to vacate an arbitration award is, therefore, very heavy.  Mays v. Lanier Worldwide, Inc., 115 F. Supp.2d 1330, 1335 (M.D. Ala. 2000)(citing O.R. Sec., Inc. v. Professional Planning Assoc., 857 F.2d 742, 748 (11th Cir. 1988).  The exclusive grounds for vacating an

15

arbitration award under the FAA include:

> 1) where the award was procured by corruption, fraud, or undue means;
>
> 2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> 3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> 4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. §10 (2009). See Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 586-91 (2008)(holding that the grounds stated in §§ 10 and 11 of the Federal Arbitration Act (FAA) for vacating or modifying an arbitration award "provide exclusive regimes for the review provided by the statute."). Plaintiff also argues a ground for vacatur that is not covered by the FAA, namely that the award should be vacated because the arbitration panel "rendered an award which violates public policy is arbitrary and capricious, irrational, and a manifest disregard of the law" (DE 1, Ex. A). The Court will first address Plaintiff's non-statutory ground for vacating the arbitration award and will then turn to Plaintiff's remaining claims.

A.

Plaintiff argues that the arbitration award should be vacated because it violates public policy, is arbitrary and capricious, irrational and constitutes a manifest disregard of the law.  See DE 1.  When considering a motion to vacate an arbitration award on the basis the award is arbitrary and capricious or contrary to public policy, the reviewing court begins by looking to the arbitration award itself to determine if there is a rational basis for the award.  Brown v. Rauscher Pierce Refsnes, Inc., 994 F.2d 775, 779 (11th Cir. 1993).  The party requesting vacatur has the obligation to refute "every rational basis upon which the arbitrator[s] could have relied."  Id. (quoting Robbins v. Day, 954 F.2d 679, 684 (11th Cir. 1992)).  Plaintiff has failed to satisfy this burden.  Further, an arbitration award "will not be held to be arbitrary and capricious unless 'a ground for the arbitrator's decision can[not] be inferred from the facts of the case.'"  Scott v. Prudential Securities, Inc., 141 F.3d 1007, 1017 (11th Cir. 1998) (quoting Raiford v. Merrill Lynch, Pierce, Fenner & Smith, 903 F.2d 1410, 1413 (11th Cir. 1990)).  Here, the arbitrators were presented with evidence as to the damages suffered by Defendant due to Plaintiff's conduct and could reasonably have fashioned their award against Plaintiff based on this evidence.  See DE Nos. 24 & 24-1, pp. 50-53.  Thus, the Court does not find the award to be arbitrary and capricious or irrational.

17

Next, Plaintiff argues that the award violates public policy by being explicitly based on a void contract provision. This is also a losing argument. Plaintiff was found liable for breach of contract, misappropriations and misuse of trade secrets based upon the liquidated damage clause of the Employment Contract and was ordered to pay Defendant compensatory damages in the amount of $1,400,000.00. See DE 1, p. 13. The panel found no liability on Defendant's claims for breach of fiduciary duty, tortious interference with contractual and business relations, breach of duty of loyalty and unfair competition and denied Defendant's request for statutorily multiplied damages, its request for punitive damages and denied all claims for attorneys' fees. Id.

An arbitration award will be vacated on public policy grounds only if the award is violative of some explicit public policy and this policy must be "well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." United Paperworks Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 43 (1987)(quotations omitted). To support his claim that the award violates public policy, Plaintiff states that "[t]he Florida Supreme Court has authoritatively and unequivocally pronounced that where, as here, the contract specifically affords a party the right to pursue actual damages in addition to or as an alternative to liquidated damages, the liquidated damages clause constitutes a

18

penalty as a matter of law and is invalid." DE 13 p. 9. The problem with this argument is that the contract at issue does not specifically afford any party the right to pursue actual damages in addition to or as an alternative to liquidated damages. The contract provision at issue states among other things "I agree that this formula represents a reasonable estimate of Schwab's actual damages and does not constitute a penalty. I agree that liquidated damages are in addition to any other relief that Schwab may be entitled to, including, but not limited to, injunctive relief and/or punitive damages." See DE 13-16, p. 6. Here, the liquidated damage clause represents Defendant Schwab's actual damages and the addition of other relief that "Schawb may be entitled to" does not invalidate the contract because Defendant is not entitled to relief that is prohibited by law. Plaintiff submits that where there is any doubt whether a stipulated damage clause constitutes a penalty, the provision is to be construed as unenforceable. See DE 13, p. 9. Here, there is no doubt. The contract specifically states that liquidated damages are a reasonable estimate of actual damages and not a penalty and nothing in the record suggests otherwise.

Next, Plaintiff argues that "the relationship between Schwab's calculation of actual damages and the stipulated liquidated damages under the contract is so out of proper proportion as to constitute an illegal penalty under Florida law." DE 13, p.10. However, this

19

argument cannot stand based on the evidence Defendant presented to the arbitration panel regarding attrition rates and profitability data. <u>See</u> DE Nos. 24-20 & 24-1, p. 50-53. This evidence included testimony from Plaintiff Aviles that approximately 40 million dollars in assets transferred to him from Defendant Schwab to Banc of America, and other evidence that the accounts at issue generated $160,003.00 in profits for the 12-month period preceding Aviles's resignation and, based on customer attrition rates, these accounts could reasonably be expected to have remained at Schwab for an average of 14 years after Aviles resigned if not for his wrongful conduct. <u>See</u> id. Plaintiff's claim that the arbitration award entered against him violates public policy, is irrational and constitutes a manifest disregard of the law, is not supported by the record or controlling authority. Therefore, the award will not be vacated on this ground.

B.

Plaintiff next claims that the arbitration award entered against him should be vacated because the arbitrators refused to hear evidence material to the controversy; namely that they refused to consider documents purportedly signed by Plaintiff's former clients which state that the clients were not solicited by him to transfer their accounts to BAI. <u>See</u> DE Nos. 2 & 13. This claim is also unsupported by the record and does not warrant vacatur of the arbitration award.

20

First, the record shows that the arbitrators did not refuse to hear evidence; they refused to consider unsworn declarations and provided that customers may be called or subpoenaed.  <u>See</u> DE 13-15. That customers were willing to vouch that they were not solicited would be relevant, but only if the customers did in fact sign and agree as Plaintiff alleged.  These declarations, as Plaintiff refers to them, were not in the clients own words.  <u>See</u> DE 13-13. They were simply forms prepared by Plaintiff or on his behalf, which consist of 4 paragraphs.  <u>Id.</u>  The first paragraph is one line that reads: "I reside in _____" with a blank line for the client to fill in information relating to his or her residence. <u>Id.</u>  The second paragraph is one line that reads: " I have known Javier Aviles for _____ years, as my financial advisor at Schwab and Banc of America Investment Services."  <u>Id.</u>  The blank line was to be filled in by the client with the applicable number of years.  <u>Id.</u>  Paragraphs three and four do not require any information from the client and read as follows:

> 3. I understand that Schwab is contending that Javier Aviles solicited me to transfer my account to Banc of America.  I can confirm that Javier Aviles did not solicit me to transfer my account to Banc of America, but that the transfer occurred on my own initiative.

> 4. When Javier Aviles resigned from Schwab, I expected to be told of his resignation immediately, as I worked closely with him on my financial affairs.  My decision to transfer my account to Banc of America was based solely on my own determination that it was

> advantageous for me to continue dealing with
> Javier Aviles.  I was not induced, solicited,
> or persuaded by Javier Aviles to transfer my
> account.

Id.  Below the four paragraphs is a line for the client's signature and the date.  Id.  Plaintiff misstates the importance of these declarations because the words used were chosen by him.  There is no way to determine, without hearing from the individuals themselves, whether they did in fact sign these documents, whether they understood what they were signing and whether any promises or representations were made to them in order to secure their signatures.

Yet, Plaintiff argues that "[p]ursuant to Section 10(c) of the FAA and §682.13(1)(d) of the FAC, the arbitrators' refusal to hear this material evidence is an express ground for vacating the Award." DE 13, p. 12.  But Plaintiff misstates the facts.  The arbitrators did not refuse to hear this evidence, they simply required the evidence to be authenticated.  According to the transcript excerpt that Plaintiff attaches to his Memorandum Of Law In Support Of Motion To Vacate Arbitration Award (DE 13), what actually transpired when Defendant Schwab's Motion in Limine was granted was that the chair of the arbitration panel stated that although the panel did not want to see anything that was "not sworn to, authenticated et cetera," he "would be happy to sign any subpoenas that are necessary, and telephonic testimony is always

available, should somebody be out of town and can't get here." DE
13-15.   There is nothing unreasonable about this ruling.   That
Plaintiff decided not to avail himself of the options presented to
him by the chair to either subpoena these clients as witnesses or
to have them testify by telephone was a choice he made to his own
detriment.

Plaintiff's claim that the arbitration award entered against
him should be vacated based on the arbitrator's refusal to hear
evidence material to the controversy is not supported by the record
and the award will not be vacated on this ground.

C.

Lastly, Plaintiff argues that he was prejudiced when the panel
refused to postpone the hearing so that Plaintiff and BAI could
review tapes of recorded telephone conversations between Defendant
and customers formerly serviced by Plaintiff, which Defendant had
allegedly concealed.   See DE 13, p. 12-14.   Further Plaintiff
argues, "not only did the chair unreasonably deny the postponement,
but he then proceeded to excuse Schwab from having to produce the
tapes by any specific time, simply in effect instructing Schwab to
'do your best' to produce the recordings at Schwab's leisure." DE
13, pp. 13-14.   Once again, Plaintiff's recitation of events
contains more fabrication than fact.

The Order from the FINRA chair, which Plaintiff attaches to
his Memorandum Of Law In Support Of Motion To Vacate Arbitration

23

Award (DE 13), actually provides that after the panel heard argument from counsel, it found that the hearings would proceed as scheduled and ordered the claimant to "expeditiously comply with the subpoenas served" and that they should comply "no later than the start of respondents' case." See DE 13-11.  The panel also ordered that as the tapes were obtained they were to be immediately produced to Respondents Aviles and BAI.  Id.  Further, the panel preserved the right to recall certain witnesses and to have certain witnesses testify by telephone.  Id.

Plaintiff now argues that the chair's failure to postpone the hearings to allow Aviles to fully review and present this "crucial recorded evidence," resulted in "extreme prejudice to Aviles and mandates the vacating of the Award pursuant to Section 10 of the FAA and Section 682.13(1)(d) of the FAC," which provide for vacatur where the arbitrators refused to postpone the hearing upon sufficient cause being shown. See DE 13, p. 12-14.  Interestingly, in making this argument, Plaintiff neglects to mention that along with ordering Defendant to produce the requested recordings before the start of Plaintiff's case, the panel also provided "[s]hould additional hearing dates be required the panel will entertain such application." DE 13-11.  Plaintiff also avoids the root of Schwab's Opposition to his Motion to Expedite Responses to his Feb. 5, 2009, Request For Production, namely that his request for these recordings was mailed to Schwab only a few weeks before the

arbitration hearings were set to begin.  See DE Nos. 13-6 & 13-7. Although Plaintiff claims that Defendant concealed the existence of these tape recordings, Defendant counters that Plaintiff has always known that certain calls at Schwab were recorded, that he worked at Schwab for over thirteen years, he signed a Consent to Recording on March 15, 1993, and he testified regarding the recorded lines in August of 2007.  See DE Nos. 13-7, p. 2; 24-3 & 24-4.  Further, Plaintiff does not state why the recorded phone calls between Schwab and customers formerly serviced by him are "crucial recorded evidence" or how, or even if, their earlier production may have altered the outcome of the proceedings.  See DE 13.  The record supports the arbitrators' finding that Plaintiff failed to demonstrate sufficient cause existed to postpone the hearing.  See Scott v. Prudential Securities, Inc., 141 F.3d 1007, 1016 (11th Cir. 1998)(noting that "the express language of the statute [9 U.S.C. §10(a)(3)] requires the party seeking a postponement to advance a "sufficient cause" for the delay.).

In reviewing an arbitrator's refusal to postpone a hearing, the Court "must decide whether there was any reasonable basis for failing to postpone the hearing to receive relevant evidence." Id. Here, the arbitration panel may reasonably have refused to postpone the hearing based on any number of legitimate factors including the

length of time these proceedings had already been delayed[4] or their belief that Plaintiff's delay in seeking these tapes was unjustified. Plaintiff has failed to prove that the arbitrator's decision not to postpone the hearing was unreasonable. Therefore, the arbitration award will not be vacated on this basis.

In conclusion, Plaintiff has not provided any argument or evidence warranting vacatur of the arbitration award entered against him in the FINRA arbitration styled <u>Charles Schwab & Co., Inc. v. Banc of America Investment Services, Inc. and Javier Aviles</u>, FINRA Case No. 07-02068, nor has he provided any argument or evidence to cause the Court to reconsider its prior Order (DE 10) denying his Motion To Amend (DE 2). Therefore, Plaintiff's Motion For Reconsideration (DE 17) and Motion For Hearing (DE 13) will be denied and Defendant's Motion For Judgment And To Confirm Arbitration Award (DE 15) will be granted. The Parties are directed to submit additional memoranda by April 14, 2010, regarding the amount of interest which has accumulated to date.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff Javier Aviles's Motion For Hearing (DE 14) and Motion For Reconsideration (DE 17) be and the same are hereby

---

[4] Schwab commenced the FINRA arbitration against Aviles and BAI on or about July 17, 2007, the first pre-hearing session with a single arbitrator was August 5, 2008, and the first of ten hearing sessions did not being until March 23, 2009. DE 1, pp. 11-14.

**DENIED;**

2. Defendant Charles Schwab & Co., Inc.'s Motion To Confirm Arbitration Award And Enter Judgment (DE 15) be and the same is hereby **GRANTED;**

3. The Parties are directed to file memoranda regarding the amount of interest accrued to date by April 14, 2010; and

4. Final Judgment will be entered by separate Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this ___9th___ day of April, 2010.

_____
WILLIAM J. ZLOCH
United States District Judge

Copies furnished:

All Counsel of Record